# Illinois Official Reports

## Appellate Court

---

### *People v. Munz*, 2021 IL App (2d) 180873

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONALD M. MUNZ, Defendant-Appellant. |
| District & No. | Second District<br>No. 2-18-0873 |
| Filed | October 14, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 13-CF-1365; the Hon. Randy Wilt, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Thomas A. Lilien, and Erin S. Johnson, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Marilyn Hite Ross, State's Attorney, of Rockford (Patrick Delfino, Edward R. Psenicka, and Stephanie Hoit Lee, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE BIRKETT delivered the judgment of the court, with opinion.<br>Justices McLaren and Zenoff concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, Donald M. Munz, appeals the summary dismissal of his petition for postconviction relief filed pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)). On appeal, defendant argues that the circuit court erred in concluding that, because he filed his postconviction petition one day before he completed his term of mandatory supervised release (MSR), he lost standing to seek relief under the Act. Although we determine that the circuit court erred in concluding that defendant lacked standing under the Act, we affirm the summary dismissal of defendant's postconviction petition, because the claims advanced therein were frivolous and patently without merit.

¶ 2                            I. BACKGROUND

¶ 3    We recount only the facts that are necessary to resolve this appeal. Defendant was convicted of stalking in violation of section 12-7.3(a)(2) of the Criminal Code of 2012 (720 ILCS 5/12-7.3(a)(2) (West 2012)) and sentenced to 2½ years' imprisonment, to be followed by 4 years of MSR. We affirmed his conviction on direct appeal, having determined that (1) his conviction did not need to be vacated in light of *People v. Relerford*, 2017 IL 121094, (2) defendant's prior bad acts toward another woman were properly admitted because they showed how he acted after he was angered, and (3) evidence of a civil no-contact order obtained by the victim was properly admitted because it was relevant to show defendant's continuing and escalating conduct, even after he was served with a no-contact order. *People v. Munz*, 2018 IL App (2d) 160159-U.

¶ 4    On September 11, 2018, while his direct appeal was pending, defendant filed a *pro se* petition for postconviction relief. A certificate of service included with the postconviction petition averred that, on August 9, 2018, defendant placed his petition into the prison mail system at the Dixon Correctional Center. Defendant alleged in his petition that his term of MSR stemming from his conviction would end on September 12, 2018, and, after that date, he would "no longer [be] able to file a postconviction [petition]." Thus, defendant's petition was filed one day before his MSR term ended.[1]

¶ 5    Defendant raised five claims in his postconviction petition. He argued that (1) the stalking statute under which he was convicted was overly broad, in violation of the first amendment; (2) his due process rights were violated when the trial judge, rather than the jury, decided if his behavior was constitutionally protected under the first amendment; (3) the phrase "communicates to or about," which our supreme court ruled was unconstitutionally overbroad in Illinois's stalking statute (*Relerford*, 2017 IL 121094, ¶ 65), was improperly included in the jury instructions; (4) the standard for finding emotional distress in the stalking statute is lower than in civil cases and therefore violates the constitution; and (5) the assistant state's attorney

---

[1]Other than the postconviction petition, we were unable to locate any document in the record specifying the date that defendant's MSR term ended. In its October 5, 2018, order, the circuit court accepted defendant's assertion that his MSR term was completed on September 12, 2018. Both parties assume on appeal that defendant's MSR term ended on that date. We also note that, as reflected in the report of proceedings, defendant informed the circuit court that he "was released on the 12th" of September 2018. Although we are unconvinced that defendant's MSR term ended on that date, we presume for purposes of this appeal that the date is correct.

who tried the case should have been disqualified because she was reprimanded by the Attorney Registration and Disciplinary Commission (ARDC) for failing to disclose exculpatory information in an unrelated case.

¶ 6      On October 5, 2018, the circuit court summarily dismissed the petition based on a lack of standing. It reasoned that, because defendant filed the petition at the "last minute," he had served his entire sentence, including his term of MSR, and "his liberty interests are no longer at risk and would not be affected by any invalidation of his conviction." It added that defendant's true aim was to purge the conviction from his record, which was an improper use of the Act.

¶ 7      Defendant filed a timely notice of appeal.

¶ 8                        II. ANALYSIS

¶ 9                        A. Standing

¶ 10      On appeal, defendant argues that the circuit court erred in concluding that, because he filed his postconviction petition one day before he completed his term of MSR, he lost standing to seek relief under the Act. Defendant offers no argument on appeal that his postconviction claims are not frivolous or patently without merit, and he does not argue that his postconviction petition presented the gist of a constitutional claim. Rather, he asserts that, because the circuit court erroneously dismissed his petition "at the first stage based only on a lack of standing," remand for automatic second-stage proceedings is required because the court failed to evaluate whether the petition was frivolous or patently without merit within the statutory 90-day window for reviewing first-stage postconviction petitions.

¶ 11      The Act provides a three-stage process for a defendant to challenge his or her conviction as being the result of a substantial denial of his or her rights under the United States Constitution, the Constitution of the State of Illinois, or both. *People v. Mendez*, 402 Ill. App. 3d 95, 98 (2010). The Act is not intended to be a substitute for a direct appeal, but rather, it is a collateral proceeding, which attacks a final judgment. *People v. Johnson*, 2019 IL App (1st) 162999, ¶ 44. The purpose of a postconviction proceeding is to allow inquiry into constitutional issues relating to the conviction or sentence that were not, and could not have been, determined on direct appeal. *People v. Wilborn*, 2011 IL App (1st) 092802, ¶ 52.

¶ 12      Under the Act, the defendant files a postconviction petition in the court where his or her original proceeding was held. *Mendez*, 402 Ill. App. 3d at 98. At the first stage of postconviction proceedings, the circuit court must determine whether the petition is frivolous or patently without merit. The defendant need present only a limited amount of detail, and the allegations are to be liberally construed and taken as true (*People v. Edwards*, 197 Ill. 2d 239, 244 (2001)), so long as they are not affirmatively rebutted by the record (*People v. Gerow*, 388 Ill. App. 3d 524, 526 (2009)). At this stage, the petition need not set forth the claim in its entirety or include legal arguments or citations to legal authority. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). The threshold that a postconviction petition must meet to survive the first stage of review is low because most postconviction petitions are drafted by *pro se* petitioners. *People v. Knapp*, 2020 IL 124992, ¶ 44. At the first stage, the circuit court reviews the defendant's petition independently, without input from the parties. *People v. Luciano*, 2013 IL App (2d) 110792, ¶ 83.

¶ 13        If the court determines that the petition is frivolous or patently without merit, it must dismiss it. 725 ILCS 5/122-2.1(a)(2) (West 2018); *Knapp*, 2020 IL 124992, ¶ 43. A postconviction petition is "frivolous or patently without merit only if it has no 'arguable basis either in law or in fact.' " *People v. Petrenko*, 237 Ill. 2d 490, 496 (2010) (quoting *People v. Hodges*, 234 Ill. 2d 1, 16 (2009)). A petition lacks an arguable basis in either law or fact if it is based on an indisputably meritless legal theory or fanciful factual allegations. *Luciano*, 2013 IL App (2d) 110792, ¶ 83. "[A] meritless legal theory is one completely contradicted by the record, while fanciful factual allegations may be fantastic or delusional." (Internal quotation marks omitted.) *Knapp*, 2020 IL 124992, ¶ 45. If the circuit court does not dismiss the petition as either frivolous or patently without merit, it advances to the second stage, where counsel may be appointed for an indigent defendant and where the State may file a motion to dismiss the petition or file an answer. *Hodges*, 234 Ill. 2d at 10-11; 725 ILCS 5/122-4, 122-5 (West 2018).

¶ 14        A circuit court's compliance with statutory procedures is a question of law, which we review *de novo*. *People v. Barber*, 381 Ill. App. 3d 558, 559 (2008). Likewise, any dismissal of a postconviction petition prior to an evidentiary hearing is reviewed *de novo*. *People v. Johnson*, 206 Ill. 2d 348, 357 (2002). "We decide *de novo* whether defendant's discharge from the Department's custody renders moot a petition for postconviction relief that he filed while still in custody." *People v. Coe*, 2018 IL App (4th) 170359, ¶ 17.

¶ 15        Here, there is no dispute that defendant was, in fact, "imprisoned in the penitentiary" as contemplated in section 122-1(a) when he filed his postconviction petition. Section 122-1(a) of the Act (725 ILCS 5/122-1(a) (West 2018)) governs standing to initiate a petition seeking postconviction relief. This section provides that "[a]ny person imprisoned in the penitentiary may institute a proceeding under this Article." *Id.* Notwithstanding the requirement that the individual be "imprisoned in the penitentiary," our supreme court has made clear that "actual incarceration is not a strict prerequisite" for initiating postconviction proceedings. *People v. West*, 145 Ill. 2d 517, 519 (1991). Rather, the requirement has been construed "to include petitioners whose liberty, in some way or another, [is] curtailed to a degree by the [S]tate." *People v. Pack*, 224 Ill. 2d 144, 152 (2007). The term "imprisoned in the penitentiary" has been held to include "defendants who have been released from incarceration after the timely filing of their petition [citation], released on appeal bond following conviction [citation], released under mandatory supervision [citation], and sentenced to probation [citation]." *West*, 145 Ill. 2d at 519. However, once a defendant has fully served the underlying sentence and his liberty interests are no longer curtailed by the State in any way, the defendant is not a person "imprisoned in the penitentiary," and the defendant lacks standing to file a petition for postconviction relief under the Act. *People v. Carrera*, 239 Ill. 2d 241, 253 (2010). "[A] petitioner loses standing to seek relief under the Act if he is no longer 'imprisoned in the penitentiary' because he has fully discharged his sentence for the challenged conviction." *People v. Johnson*, 2021 IL 125738, ¶ 37 (citing *Carrera*, 239 Ill. 2d at 253).

¶ 16        Not only was defendant's term of MSR in effect when he filed the petition, but he was actually incarcerated at the Dixon Correctional Center when he placed his postconviction petition into the prison mail system on August 9, 2018, as well as when the clerk of the circuit court file-stamped the petition on September 11, 2018. See *People v. Correa*, 108 Ill. 2d 541, 547 (1985) (holding that a defendant who is serving the MSR portion of his sentence has standing under the Act to file a petition seeking postconviction relief); see also *Coe*, 2018 IL

App (4th) 170359, ¶ 22 (observing that, "according to the supreme court, being imprisoned at the time one files the petition is enough to satisfy section 122-1(a), and section 122-1(a) remains satisfied even if, during the pendency of the postconviction proceeding, one is released from prison"). Indeed, the State concedes on appeal that "[d]efendant did have one day remaining on his MSR at the time he filed his petition, so it appears that he had standing at the time that he filed [his postconviction petition]."

¶ 17        Nevertheless, the State argues that "standing was lost, and the case became moot[,] when [defendant] finished his MSR, one day later." In support of its mootness argument, the State relies primarily on *People v. Henderson*, 2011 IL App (1st) 090923. There, the defendant completed his term of MSR while his appeal concerning the summary dismissal of his postconviction petition was pending. *Id.* ¶¶ 1, 8. The First District noted that the "defendant's liberty [was] no longer encumbered by his convictions," and it proceeded to "consider whether the parties' contentions under the Act [had] been rendered moot." *Id.* ¶ 8. The *Henderson* court stated that, because the defendant completed his MSR term while his postconviction petition was pending, he "no longer need[ed] the Act's assistance to secure his liberty." *Id.* ¶ 15. The court concluded that the defendant had "lost standing under the Act, a defect that cannot be cured," and "the parties' arguments under the Act [had] become moot." *Id.* In other words, *Henderson* stands for the proposition that, even though a defendant on MSR has standing to file a petition seeking postconviction relief under the Act, he or she loses standing, and the case becomes moot, if the defendant's term of MSR is completed before the petition is adjudicated. In so holding, the *Henderson* court stated that it found

> "no meaningful distinction to be drawn between instances where the defendant's liberty is not encumbered when he files the petition and those instances in which a defendant regains his liberty after the petition is filed. The purpose of the Act would not be fulfilled by giving either defendant relief. He is no longer on that string and the State cannot affect his liberty at present." *Id.* ¶ 14.

¶ 18        Admittedly, *Henderson* supports the State's position in the instant matter. After defendant filed his postconviction petition, he completed his MSR term, and he no longer needed the Act's assistance to secure his liberty. However, *Henderson* has been widely criticized, and our research did not reveal any case that has followed it. Less than six months after *Henderson* was decided, in *People v. Jones*, 2012 IL App (1st) 093180, ¶¶ 4, 10, a different division of the First District disagreed with *Henderson* and held that a defendant's completion of his or her MSR term while his or her timely filed postconviction petition was pending neither strips the defendant of standing nor renders his or her postconviction petition moot. The *Jones* court relied, in part, on a "foundation of prior Illinois Supreme Court cases where the court has made clear that all that is required is that a petitioner must still be serving any sentence imposed, including any period of [MSR], at the time of the initial timely filing of his petition." *Id.* ¶ 10 (citing *People v. Davis*, 39 Ill. 2d 325 (1968), and *Carrera*, 239 Ill. 2d 241). The *Jones* court stated that the Illinois Supreme Court had "directly addressed this issue" in *Davis*, where the court stated:

> "[T]he State has asserted that the petition should be dismissed because Davis was not incarcerated at the time the cause was heard. The State relies on the wording of the Post-Conviction Hearing Act which gives 'any person imprisoned in the penitentiary' the right to allege a substantial denial of constitutional rights [citation] and this court's comment that the legislative intent behind this provision was 'to make the remedy

available only to persons actually being deprived of their liberty and not to persons who had served their sentences and who might wish to purge their records of past convictions.' [Citation.] In some jurisdictions post-conviction remedies may be utilized to attack unconstitutional convictions regardless of the fact that the petitioner has fully served his sentence. [Citations.] Others restrict use of this remedy, usually because of statutory language, to those persons actually imprisoned at the time of hearing. [Citations.] As there are obvious advantages in purging oneself of the stigma and disabilities which attend a criminal conviction, we see no reason to so narrowly construe this remedial statute as to preclude the remedy in every case in which the petition is not filed and the hearing completed before imprisonment ends." *Davis*, 39 Ill. 2d at 328-29.

¶ 19 When faced with this split of authority, the First District has repeatedly declined to follow *Henderson* in a series of unpublished cases. In *People v. Sanchez*, 2015 IL App (1st) 130369-U, for example, the defendant filed his postconviction petition just three days before he completed his MSR term (*id.* ¶ 24), and the State " 'maintain[ed] that the *Henderson* discussion of standing to seek post-conviction relief is incorrect and [the appellate court] should not follow it' " (*id.* ¶ 21). The court in *Sanchez* agreed and stated that it was "persuaded that the conclusion reached by our colleagues in *Jones* is correct. That is, a petitioner who timely files a post-conviction petition does not lose standing under the Act merely because he completes his MSR term by the time that his petition comes before the court for review." *Id.* ¶ 28; see also *People v. Sims*, 2019 IL App (1st) 160029-U, ¶ 51 (declining to follow *Henderson* because "the weight of authority stands against" it); *People v. Lash*, 2020 IL App (1st) 170750-U, ¶ 48 (declining to follow *Henderson* and holding that "defendant still has standing under the Act even though he completed his term of [MSR] as he filed his postconviction petition while in custody"). Other appellate districts have likewise declined to follow *Henderson*. See, *e.g.*, *People v. Shehadeh*, 2016 IL App (5th) 130295-U, ¶ 16 (following "the *Jones* case in holding that postconviction petitions that are timely filed but are not heard on appeal until after the defendant's release from incarceration are not inherently moot").

¶ 20 In *People v. McDonald*, 2018 IL App (3d) 150507, ¶ 14, the Third District considered whether the defendant had standing to maintain his postconviction petition after he was fully released from the penitentiary and his MSR term was discharged while his direct appeal was pending. The court evaluated "whether the 'imprisoned in the penitentiary' requirement of the Act is a limitation only upon the *filing* of a postconviction petition or a limitation upon the receipt of *relief* under the Act." (Emphases in original.) *Id.* ¶ 18. The *McDonald* court stated that the requirement in section 122-1(a) that one be "imprisoned in the penitentiary" in order to institute a proceeding under the Act plainly referred to the commencement of proceedings, but it noted that this section was "silent as to any requirements for the receipt of relief." *Id.* ¶ 19. In analyzing this issue, *McDonald* acknowledged that our supreme court "has repeatedly referenced the legislature's intent with regard to the [A]ct, consistently and assuredly casting the custody requirement in terms of *relief*" (emphasis added) (*id.* ¶ 20), noting further that the supreme court has "consistently pointed to liberty interests as the defining aspect of the Act (*id.* ¶ 21). Nevertheless, the court relied on the court's actions in *Davis*—indeed, quoting the same language from *Davis* as did the *Jones* court—and it held that "a defendant who timely files his postconviction petition while in custody is eligible for relief under the Act, regardless of whether he is released from custody in the intervening time." *Id.* ¶ 23.

¶ 21    The *McDonald* court noted that *Davis* represented the "single occasion" where our supreme court directly addressed the issue and that *Davis* "held that a defendant who filed his postconviction petition while in custody, but who was released from custody prior to disposition of the petition, was entitled to relief." *Id.* ¶ 22. *McDonald* stressed that *Davis* remained good law, even though the result seemingly conflicted with language used by the court on other occasions that focused on the defendant's liberty and possible receipt of relief under the Act. *Id.* ¶¶ 22-23; see *Coe*, 2018 IL App (4th) 170359, ¶ 35 (discussing *McDonald* and observing that "the cases in which the supreme court had used such language were not factually on point: that is, they were not cases like *Davis*, in which the defendant filed a postconviction petition while in custody and was released from custody while the petition still was pending"). *McDonald* also was persuaded by the rule of lenity, which "dictates that criminal statutes generally be construed in favor of a defendant." *McDonald*, 2018 IL App (3d) 150507, ¶ 23.

¶ 22    In *Coe*, 2018 IL App (4th) 170359, ¶ 17, which neither party cites, the Fourth District evaluated whether the defendant's completion of his sentence rendered moot his petition for postconviction relief that he filed while in custody. *Coe* discussed in detail many of the same cases we have outlined above, and it agreed with *Jones* and *McDonald*, rather than *Henderson*. *Id.* ¶ 50. It commented that *Henderson* overlooked the fact that "imprisoned in the penitentiary" was held in *Davis*, as interpreted in *Carrera*, to include "defendants who have been released from incarceration after timely filing their petition" and that defendants may satisfy the "imprisoned in the penitentiary" requirement of section 122-1(a) even though they were no longer actually being deprived of their liberty. (Internal quotation marks omitted.) *Id.* ¶ 26. Moreover, *Coe* noted that *Henderson* erroneously blurred the distinction between statutory standing and the common-law prohibition against deciding moot issues. *Id.* ¶¶ 28, 39-49. It explained that "[s]ection 122-1(a) addresses the petitioner's standing at the time the petitioner institutes the postconviction proceeding; it has nothing to say about events occurring after the institution of the proceeding." *Id.* ¶ 48.

¶ 23    We agree with *Jones*, *McDonald*, and *Coe*, and we decline to follow *Henderson*. As *Coe* aptly stated, a "[d]efendant's interest in purging [himself] of the stigma and disabilities which attend a criminal conviction would not have given him *standing* under section [122-1(a) of the Act], but after his release from custody, that interest prevents his case from being *moot*." (Emphasis in original and internal quotation marks omitted.) *Id.* ¶ 50. The procedural posture of the instant matter presents a like scenario. Defendant was unquestionably "imprisoned in the penitentiary" when he filed his petition, such that he had standing under the Act to initiate postconviction proceedings, and his subsequent completion of his MSR term did not render his petition moot. See *id.* Although defendant's postconviction petition was filed at the "last minute," the circuit court was without authority to craft a "last minute" exception, and the summary dismissal of defendant's petition on that basis was error. Rather, "all that is required is that a petitioner must still be serving any sentence imposed, including any period of [MSR], at the time of the initial timely filing of his petition." *Jones*, 2012 IL App (1st) 093180, ¶ 10.

¶ 24                           B. *De Novo* Review of the Merits

¶ 25    We next consider whether remand for second-stage proceedings is warranted. Defendant argues that remand for automatic second-stage proceedings is required because the circuit court "did not address the merits of the allegations in [his] petition" during the initial 90-day period

for first-stage postconviction review as required in section 122-2.1 of the Act. He stresses that, because his petition was filed on September 11, 2018, the circuit court had 90 days from that point, or until December 10, 2018, to conduct its initial review of the petition. Defendant acknowledges that the court summarily dismissed his petition on October 5, 2018, which was within the 90-day review period. Nevertheless, he argues, because the court dismissed his petition based on a lack of standing, it did not consider "whether the claims set forth in [his] petition were frivolous or patently without merit." Defendant relies on *People v. Hommerson*, 2014 IL 115638, ¶¶ 11, 14, in which our supreme court remanded for second-stage proceedings after holding that a postconviction petition may not be dismissed at the first stage solely because it lacked a verification affidavit.

¶ 26 Defendant's argument fails. After briefing was completed in this case, our supreme court decided *Johnson*, 2021 IL 125738, wherein it agreed "that a lack of standing is more like *res judicata* and forfeiture, which are appropriate bases for first-stage dismissal" (*id.* ¶ 48 (citing *People v. Blair*, 215 Ill. 2d 427, 445 (2005))) and is unlike the affidavit requirement, as was at issue in *Hommerson* (*id.* ¶¶ 43-46). It reasoned that, "[u]nlike timeliness and the verification affidavit requirement, which involve 'procedural compliance,' *res judicata* and forfeiture involve conclusions of law. [Citation.] Standing under the Act also involves a conclusion of law in that the legislature has identified who may institute proceedings and the conditions under which the proceedings may be brought." *Id.* ¶ 49. Ultimately, our supreme court held that, "where a defendant lacks standing under the Act because he is not 'imprisoned in the penitentiary' [citation], a claim brought under the Act is necessarily 'frivolous' or 'patently without merit.' " *Id.* ¶ 50.

¶ 27 Here, applying the reasoning in *Johnson*, the circuit court necessarily found the petition to be frivolous and patently without merit because it summarily dismissed it within the 90-day timeframe based on its determination that defendant lacked standing. The court thus satisfied its statutory obligation to independently review the petition within 90 days of its filing and dismiss it where the court finds the petition to be frivolous or patently without merit, and defendant cannot benefit from an automatic advancement to the second stage of postconviction proceedings. It is of no consequence that the precise reason cited by the circuit court was erroneous, because our review of a first stage dismissal is *de novo*. " 'We review the trial court's judgment, not the reasons cited, and we may affirm on any basis supported by the record if the judgment is correct.' " *People v. Knapp*, 2019 IL App (2d) 160162, ¶ 37 (quoting *People v. Anderson*, 401 Ill. App. 3d 134, 138 (2010)).

¶ 28 The State argues, as an alternative basis for affirmance, that the circuit court's summary dismissal of defendant's postconviction petition was proper because the issues defendant raised therein are barred by *res judicata* or are otherwise forfeited and thus are frivolous and patently without merit. We agree that defendant's postconviction petition is frivolous and patently without merit. As stated, postconviction proceedings are meant to "permit an inquiry into constitutional issues involved in the original conviction and sentence that were not, and could not have been, adjudicated previously on direct appeal." *People v. Newbolds*, 364 Ill. App. 3d 672, 675 (2006). Thus, in an initial proceeding under the Act, "*res judicata* and waiver operate to bar the raising of claims that were or could have been adjudicated on direct appeal." *Id.* It is well established that "the phrase 'frivolous or patently without merit' encompasses the common-law doctrines of *res judicata* and forfeiture such that claims that were, or could have been, raised and adjudicated are barred and are subject to summary dismissal at the first stage."

*People v. Kane*, 2013 IL App (2d) 110594, ¶ 26. *Res judicata* bars the consideration of issues that were previously raised and decided on direct appeal, whereas forfeiture bars any claims that could have been raised on direct appeal but were not. *Newbolds*, 364 Ill. App. 3d at 675-76.

¶ 29 Of the five arguments defendant raised in his postconviction petition, four were based upon the trial record as it existed at the time he filed his direct appeal, namely that (1) the stalking statute is overly broad, (2) his due process rights were violated when the judge evaluated whether defendant's behavior was protected under the first amendment, (3) the phrase "communicates to or about," which our supreme court ruled was unconstitutionally overbroad in Illinois's stalking statute (*Relerford*, 2017 IL 121094, ¶ 65), was included in the jury instructions, and (4) the standard for finding emotional distress in the stalking statute violates the constitution. In defendant's direct appeal, we rejected his argument that his conviction was unconstitutional based on *Relerford*, 2017 IL 121094. *Munz*, 2018 IL App (2d) 160159-U, ¶¶ 29-50. Indeed, defendant's third argument, that the jury instructions were improper in light of *Relerford*, is a repackaged version of the argument we rejected on direct appeal. See *People v. Simms*, 192 Ill. 2d 348, 360 (2000) (noting that a "petitioner may not avoid the bar of *res judicata* simply by rephrasing issues previously addressed on direct appeal"). That argument is therefore *res judicata* and may not be raised again in a postconviction petition. See *Blair*, 215 Ill. 2d at 442-46. Similarly, defendant's first, second, and fourth arguments in his postconviction petition are forfeited, because they could have been raised on direct appeal but were not. See *id.* at 446-47. "Determinations of the reviewing court on direct appeal are *res judicata* as to issues actually decided, and issues that could have been raised on direct appeal but were not are [forfeited]." *People v. Erickson*, 183 Ill. 2d 213, 222 (1998). Defendant makes no argument, in either his opening brief or his reply brief, that these arguments arise from matters outside the record and thus could not have been brought in his direct appeal, nor does he argue that fundamental fairness requires that the doctrines of *res judicata* and forfeiture be relaxed. See *People v. Coleman*, 267 Ill. App. 3d 895, 898 (1994) (noting that *res judicata* and waiver do not apply to issues raised in a postconviction petition that stem from matters outside the record or where fundamental fairness requires those doctrines to be relaxed). He also makes no argument that the claims were not raised in his direct appeal because his appellate counsel was incompetent. See *Newbolds*, 364 Ill. App. 3d at 675-76. Because these arguments were based on the record and were not raised on direct appeal, and because defendant does not allege that his appellate counsel was ineffective for failing to raise them, they are forfeited and thus frivolous and patently without merit as a matter of law. Therefore, the circuit court properly dismissed them.

¶ 30 The State concedes that defendant's fifth claim, that the assistant state's attorney who tried the case should have been disqualified because she was reprimanded by the ARDC for failing to disclose exculpatory information in an unrelated case, is the only matter that lies outside of the original record. The State argues, and we agree, that defendant's claim is meritless. The online records of the ARDC, of which we may take judicial notice (*BAC Home Loans Servicing, LP v. Popa*, 2015 IL App (1st) 142053, ¶ 21 n.1), reflect that, on July 13, 2014, the ARDC administrator filed a complaint against the assistant state's attorney who prosecuted defendant. The allegations were unrelated to defendant's case.

¶ 31 Notably, defendant's trial had concluded before the ARDC complaint was filed. More importantly, however, at the conclusion of the ARDC proceedings, no action was taken that

would limit the assistant state's attorney's ability to practice law or otherwise prosecute defendant's case. As such, defendant's assertion that she should have been disqualified due to the ARDC proceedings lacks an arguable basis in law, and we therefore deem it frivolous and patently without merit. See *Luciano*, 2013 IL App (2d) 110792, ¶ 83 (noting that "a petition that lacks an arguable basis in either law or fact is one that is based on an indisputably meritless legal theory or fanciful factual allegations"). Because all five of defendant's arguments included in his postconviction petition are frivolous and patently without merit, the circuit court did not err in summarily dismissing it.

¶ 32                                    III. CONCLUSION
¶ 33          For the reasons stated, we affirm the judgment of the circuit court of Winnebago County.

¶ 34          Affirmed.