NOTICE
Decision filed 05/18/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250248-U

NO. 5-25-0248

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Wabash County. |
| | ) | |
| v. | ) | No. 23-CF-22 |
| | ) | |
| JOHN W. DARDEEN, | ) | Honorable |
| | ) | William C. Hudson, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HACKETT delivered the judgment of the court.
Justices Barberis and Sholar concurred in the judgment.

**ORDER**

¶ 1     *Held*: The circuit court did not err in summarily dismissing the defendant's *pro se* postconviction petition. Because no argument to the contrary would have arguable merit, the defendant's appellate counsel is granted leave to withdraw, and the judgment of the circuit court of Wabash County is affirmed.

¶ 2     The defendant, John W. Dardeen, appeals the judgment of the circuit court of Wabash County that summarily dismissed the defendant's *pro se* postconviction petition. The Office of the State Appellate Defender (OSAD) was appointed as the defendant's appellate counsel. OSAD has concluded that this appeal lacks arguable merit and, on that basis, has filed a motion for leave to withdraw as counsel, pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), along with a supporting memorandum of law. OSAD properly served the defendant with notice. This court gave the defendant the opportunity to file a response to OSAD's motion. The defendant did not file a

1

response. We have reviewed OSAD's *Finley* motion and memorandum, and the entire record on appeal. We agree with OSAD's assessment of this appeal. We therefore grant OSAD's motion for leave to withdraw, and we affirm the judgment of the circuit court.

¶ 3                                    I. BACKGROUND

¶ 4     On April 4, 2023, the defendant was charged by information with (1) one count of possession of methamphetamine with intent to deliver, a Class X felony, in violation of section 55(a)(1) of the Methamphetamine Control and Community Protection Act (720 ILCS 646/55(a)(1) (West 2020)); (2) one count of aggravated participation in methamphetamine production, a Class X felony, in violation of section 15(b)(1)(D) of the Methamphetamine Control and Community Protection Act (720 ILCS 646/15(b)(1)(D) (West 2020)); and (3) one count of cannabis manufacturing, a Class 3 felony, in violation of section 5(d) of the Cannabis Control Act (720 ILCS 550/5(d) (West 2020)). The information alleged that all three offenses occurred on or about February 8, 2023.

¶ 5     The circuit court made a docket entry on April 17, 2023, that indicated that the defendant appeared in court, in custody, and that the defendant was "fully advised" regarding the charges he faced as well as the potential penalties for those charges. The entry stated that the public defender had been appointed to represent the defendant, and that a preliminary hearing was set for April 24, 2023. The circuit court made a docket entry on April 24, 2023, that indicated that because the attorney appointed to represent the defendant had a conflict of interest, that attorney's appointment was vacated. The circuit court appointed a new attorney to represent the defendant, and instructed the circuit clerk to notify that attorney that the defendant had private counsel in a separate pending matter.

2

¶ 6 On May 8, 2023, the defendant's preliminary hearing was held. At the hearing, Detective Sergeant Eddie Johnson testified that he was employed by the Mt. Carmel Police Department, and that on February 9, 2023, he assisted in the execution of a search warrant at the defendant's residence. He testified that inside the residence, he found "several items" related to the manufacture and sale of methamphetamine and cannabis. A shotgun was also found in the residence, near the other materials. Detective Sergeant Johnson testified that testing showed that a total of "approximately 170 grams" of cannabis were found in the defendant's residence, along with a total of "[j]ust under 280 grams" of methamphetamine. The circuit court found probable cause to continue the prosecution of each count in the information. Defense counsel elected to proceed to arraignment, and requested a further pretrial hearing. Defense counsel stated that he wished to confer with the defendant's attorney in the other pending matter to ensure defense counsel did not "step on the other attorney's toes for whatever he's doing."

¶ 7 On July 17, 2023, the defendant appeared with his defense counsel from his other pending case, who explained that he was present because the defendant wished for all of his pending matters to be resolved at the hearing. The circuit court ensured that the defendant wished to proceed as stated by counsel and that the defendant had conferred with both attorneys before making his decision. The circuit court then asked the State for the terms of the "fully negotiated plea" agreement in this case.

¶ 8 The State indicated that the defendant would plead guilty to count I, possession of methamphetamine with intent to deliver, a Class X felony, and "would receive a sentence of 11 years in the Illinois Department of Corrections," to be served at 75%, and "to be followed by an 18-month [mandatory supervised release] period." The defendant would receive credit for his time served in jail prior to the hearing, and the State would recommend substance abuse treatment for

the defendant while he was incarcerated. The defendant's sentence would be served consecutively to his sentence in the other pending case, which the State identified as case number "22-CF-31." The other two counts charged in this case would be dismissed.

¶ 9 The circuit court ensured that the defendant understood and agreed to the terms above, then admonished the defendant regarding the charges against the defendant, the possible penalties the defendant faced, the trial rights the defendant was "waiving or giving up by pleading guilty, and the possible consequences of" the plea. Among other things, the circuit court ensured that the defendant had "had an ample opportunity to discuss" the plea agreement with both attorneys. The circuit court also ensured that the plea agreement was not the result of threats, force, or promises other than those presented to the court, and that the defendant was entering the agreement of his "own free will." The defendant signed a written plea of guilty and waiver of jury.

¶ 10 As a factual basis for the plea, the State indicated that on February 8, 2023, following a trial in 22-CF-31, the defendant was convicted of delivery of methamphetamine. During that trial, the defendant testified about drug activity at his residence. As a result, on February 9, 2023, the search warrant discussed above was issued and executed. The State indicated that the search led to the discovery of "items used to manufacture methamphetamine, as well as in excess of 600 grams of substances containing methamphetamine and approximately 47 grams of cannabis that weighed that way, excluding cannabis present in edible products." The State noted that the search also led to the discovery of "two spy cameras and a sawed-off shotgun."

¶ 11 The circuit court inquired about the defendant's criminal history, which the parties agreed was accurately contained in a presentence investigation report that was prepared for the defendant's sentencing in 22-CF-31. The parties stipulated to the use of that report for sentencing in this case as well. The circuit court thereafter accepted the guilty plea agreement "as knowingly,

4

understandingly and voluntarily made, [and] supported by a factual basis." The circuit court entered judgment, conviction, and sentence in accordance with the terms of the plea agreement. The circuit court admonished the defendant of his appeal rights, including that "[p]rior to taking an appeal," the defendant was required to file in the circuit court, within 30 days of the date of the hearing, a "written motion asking to have the judgment vacated and for leave to withdraw [the defendant's] plea of guilty, setting forth the grounds for the motion." The defendant stated that he understood his appeal rights, and the case proceeded to a separate sentencing hearing for the defendant's conviction in 22-CF-31.

¶ 12    The defendant did not move in the circuit court to withdraw his guilty plea. On October 30, 2024, he filed a "late notice of appeal," wherein he contended his plea counsel misled, coerced, and/or intimidated him into pleading guilty. He stated that he failed to file a notice of appeal within 30 days because he attempted to withdraw his guilty plea while in jail. The defendant included, as an exhibit to the late notice of appeal, a purported November 7, 2023, docket entry in 22-CF-31, which stated that the circuit court had received correspondence from the defendant in which the defendant claimed he had filed a notice of appeal in that case "on or about August 8th or 9th" of 2023. The docket entry stated that no notice of appeal had been located.

¶ 13    On November 18, 2024, this court appointed OSAD to represent the defendant in the filing of an amended motion for leave to file a late notice of appeal in this case. On January 13, 2025, the defendant, via OSAD, moved to dismiss the defendant's appeal. The motion stated that the defendant had "decided to dismiss this appeal and ha[d] provided [OSAD] with written authorization to do so." The motion stated that the defendant had "been advised by letter of the consequences of dismissing this appeal, specifically, that doing so forgoes any attack on the judgment below by means of this appeal." OSAD's motion was accompanied by a letter, signed

5

by the defendant, which stated that the defendant had been informed of the consequences of dismissing his appeal, and that he wished to dismiss the appeal. On January 16, 2025, this court dismissed the defendant's appeal.

¶ 14 On March 3, 2025, the defendant filed a *pro se* verified petition (petition) pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)). The petition first alleged the defendant received ineffective assistance of plea counsel because plea counsel "induced him to plead guilty or suffer a 50-year prison term as a consequence." The petition alleged simultaneously that plea counsel "blatantly lied" to the defendant, and that plea counsel was not adequately familiar with the law governing the defendant's possible sentence. The petition next alleged plea counsel did not perform a "reasonable pretrial investigation." In support of this allegation, the petition noted two issues the defendant was currently raising on appeal in 22-CF-31. One of these issues involved the alleged inadequate pretrial investigation in 22-CF-31 by the same counsel, and the other issue involved the alleged inadequate *voir dire* by that counsel during the 22-CF-31 trial. The petition made no connection between counsel's alleged deficiencies in 22-CF-31 and the present case, other than to state "[plea counsel] ignored these leads—and nevertheless induced [the defendant] to plead guilty in the instant appeal." Accompanying the petition was a partially-handwritten affidavit from an individual named Alonzo Dardeen, who averred the following: (1) he "never saw [the defendant] sell or buy anything," (2) the defendant "did pick up some weed for John Hughes but never saw Hughes pay for it," and (3) he "saw [the defendant] drink alcohol and smoked a very little weed."

¶ 15 Also on March 3, 2025, the circuit court, by docket entry, summarily dismissed the petition. The circuit court noted that this was the defendant's first postconviction petition, and that it did not raise a freestanding claim of actual innocence. The circuit court stated that the petition stated

"the gist of a constitutional claim," that "the facts [were] and [were] not contained in the record (conversations with [plea counsel])," and that the claims were not raised on direct appeal. The circuit court added that "the claim is not frivolous," and was supported by an affidavit. However, the circuit court reasoned that the petition was subject to summary dismissal because the claims in the petition "could have been raised in the appeal that [the defendant] filed and asked to be dismissed." On March 26, 2025, the defendant filed a timely notice of appeal, and this appeal followed.

¶ 16                                II. ANALYSIS

¶ 17    The defendant appeals the circuit court's judgment that summarily dismissed the petition. As noted above, OSAD has filed a *Finley* motion to withdraw as counsel. In the legal memorandum accompanying its motion, OSAD raises five potential issues and explains why it believes each is without merit. For the reasons that follow, we agree with OSAD.

¶ 18    The Act provides a means by which a criminal defendant may assert that, in the proceedings that resulted in the defendant's conviction, there occurred a substantial denial of the defendant's rights under the United States Constitution, the Illinois Constitution, or both. *People v. Evans*, 2013 IL 113471, ¶ 10 (citing 725 ILCS 5/122-1(a)(1) (West 2008)). A proceeding under the Act is not a substitute for a direct appeal; rather, it is a collateral proceeding which attacks a final judgment. *People v. Munz*, 2021 IL App (2d) 180873, ¶ 11. The purpose of a proceeding under the Act is to allow inquiry into constitutional issues related to the conviction or sentence that were not, and could not have been, determined on direct appeal. *Munz*, 2021 IL App (2d) 180873, ¶ 11. Accordingly, the doctrine of *res judicata* bars a defendant from raising in a postconviction petition issues that were actually decided in the defendant's direct appeal. *People v. Clark*, 2023 IL 127273,

7

¶ 41. Issues that could have been raised in the defendant's direct appeal, but were not, are barred by the doctrine of forfeiture. *Munz*, 2021 IL App (2d) 180873, ¶ 28.

¶ 19 At the first stage of proceedings under the Act, the circuit court must determine whether the petition is frivolous or patently without merit. *Munz*, 2021 IL App (2d) 180873, ¶ 12. The petition may present only a limited amount of detail, and its allegations are to be liberally construed and taken as true so long as they are not affirmatively rebutted by the record. *Munz*, 2021 IL App (2d) 180873, ¶ 12. The petition need not set forth the claims in their entirety or include legal arguments or citations to legal authority. *Munz*, 2021 IL App (2d) 180873, ¶ 12. The threshold that a postconviction petition must meet to survive the first stage of review is low because most postconviction petitions are drafted by *pro se* petitioners. *Munz*, 2021 IL App (2d) 180873, ¶ 12. Nevertheless, *res judicata* and forfeiture are well-established reasons to summarily dismiss a petition at the first stage of proceedings. *Munz*, 2021 IL App (2d) 180873, ¶ 28. A petition is also frivolous and patently without merit, and therefore must be dismissed at the first stage of proceedings, if the petition has no arguable basis in either law or fact, such as when it is based on an indisputably meritless legal theory or fanciful factual allegations. *Munz*, 2021 IL App (2d) 180873, ¶ 13. An indisputably meritless legal theory is one that is completely contradicted by the record, whereas fanciful factual allegations may be fantastic or delusional. *Munz*, 2021 IL App (2d) 180873, ¶ 13. We review *de novo* the first-stage dismissal of a petition. *Munz*, 2021 IL App (2d) 180873, ¶ 14. In so doing, we review the circuit court's judgment, not the reasons cited, and we may affirm on any basis supported by the record if the judgment is correct. *Munz*, 2021 IL App (2d) 180873, ¶ 27.

¶ 20 In this case, OSAD is correct that there would be no merit to an argument that the summary dismissal of the petition was not procedurally proper under the Act. The Act requires a summary

8

dismissal to occur within 90 days of the filing of the petition. 725 ILCS 5/122-2.1(a) (West 2022). The petition in the instant appeal was filed on March 3, 2025, and was summarily dismissed by the circuit court on the same day, which was well within the 90-day window for a summary dismissal. OSAD is also correct that there is no indication in the record that the State participated improperly at the first stage of proceedings.

¶ 21    OSAD next asserts that it considered raising the issue of whether remand for further proceedings is required because the circuit court's reasoning for summarily dismissing the petition was erroneous. In support of this potential issue, OSAD notes that the circuit court first stated that the petition raised the non-frivolous gist of a constitutional claim. Nevertheless, the circuit court then dismissed the petition, because the circuit court believed the claim could have been raised on direct appeal but was not. As OSAD points out, the circuit court's reasoning was incorrect for two reasons: (1) the existence of a non-frivolous gist of a constitutional claim is usually sufficient to advance a petition to second-stage proceedings, and (2) as the circuit court's order recognized, the ineffective assistance of plea counsel claim was based on facts both within, and outside of, the record on appeal—the latter being the defendant's private conversations with his plea counsel— and accordingly the claim could not have been raised on direct appeal. See, *e.g.*, *People v. Blair*, 215 Ill. 2d 427, 450-51 (2005) (doctrines of *res judicata* and forfeiture do not bar claim in postconviction petition that was not raised on direct appeal if facts of claim "do not appear on the face of the original appellate record"). However, OSAD is correct that there would be no merit to such an argument because, as explained above, our *de novo* review of the summary dismissal focuses on the circuit court's judgment, not the reasoning cited by the circuit court for that judgment, and we may affirm on any basis supported by the record if the judgment is correct. *Munz*, 2021 IL App (2d) 180873, ¶ 27. Thus, remand for further proceedings is not required due

9

to any errors in the circuit court's reasoning if we conclude, as we do below, that the circuit court's judgment was correct.

¶ 22     First, we agree with OSAD that the petition did not set forth an arguably meritorious claim of ineffective assistance of plea counsel. With regard to the defendant's claim of ineffective assistance of plea counsel related to the alleged deficiencies of counsel in 22-CF-31, OSAD is correct that the defendant did not even allege a nexus between those deficiencies and his decision to plead guilty in this case. Moreover, as explained above, the Act provides a means by which a criminal defendant may assert that, *in the proceedings that resulted in the defendant's conviction*, there occurred a substantial denial of the defendant's rights under the United States Constitution, the Illinois Constitution, or both. *Evans*, 2013 IL 113471, ¶ 10 (citing 725 ILCS 5/122-1(a)(1) (West 2008)). Here, the alleged errors did not occur in the proceedings that resulted in the defendant's conviction—the guilty plea hearing in the present case; instead, they occurred in a wholly separate and unrelated case, 22-CF-31, which had its own independent pretrial and trial proceedings. In addition, OSAD is correct that this claim is now barred by collateral estoppel, because this court recently rejected the underlying allegations of error in 22-CF-31 in the defendant's direct appeal from that case. See *People v. Dardeen*, 2025 IL App (5th) 240017-U, ¶¶ 20-29; *People v. Tenner*, 206 Ill. 2d 381, 396 (2002) ("collateral estoppel doctrine bars relitigation of an issue already decided in a prior case").

¶ 23     With regard to the defendant's claim of ineffective assistance of plea counsel based upon the allegation that counsel "induced him to plead guilty or suffer a 50-year prison term as a consequence," we first note that the petition simultaneously alleged that plea counsel "blatantly lied" to the defendant, and that plea counsel was not adequately familiar with the law governing the defendant's possible sentence. As OSAD points out, even if these allegations are "liberally

10

construed as a claim that [the defendant] was misadvised by" plea counsel that the circuit court would be "required to impose a 50-year sentence after a trial, and then taken as true at the first stage of proceedings, any prejudice [the defendant] may have suffered" was cured when the circuit court admonished the defendant "about a much lower minimum sentence during his plea colloquy." See, *e.g.*, *People v. Ramirez*, 162 Ill. 2d 235, 239-46 (1994) (summary dismissal of postconviction petition is not improper where admonishments from circuit court cured the alleged misrepresentations by plea counsel regarding the sentence the defendant would receive). As OSAD further points out, the defendant was admonished by the circuit court that he faced a minimum sentence of 10 years, and a maximum sentence of 50 years. We agree that this admonishment by the circuit court cured the alleged errors of plea counsel.

¶ 24   OSAD states the final issue it considered raising was whether the defendant "alleged an arguable claim of actual innocence" in the petition by attaching the affidavit of Alonzo Dardeen, who averred that (1) he "never saw [the defendant] sell or buy anything," (2) the defendant "did pick up some weed for John Hughes but never saw Hughes pay for it," and (3) he "saw [the defendant] drink alcohol and smoked a very little weed." However, OSAD is correct that such an argument would be without merit because nothing in the plain language of the petition can be construed as an actual innocence claim, and Alonzo Dardeen and John Hughes are not mentioned anywhere else in the petition, or anywhere else in the record on appeal in this case. As OSAD points out, Hughes is identified in our disposition of the defendant's direct appeal in 22-CF-31 as a "confidential informant" in that case. *Dardeen*, 2025 IL App (5th) 240017-U, ¶ 4. However, he is not tied in any way to this case, and as noted above, the Act provides a means by which a criminal defendant may assert that, *in the proceedings that resulted in the defendant's conviction*, there occurred a substantial denial of the defendant's rights under the United States Constitution,

11

the Illinois Constitution, or both. *Evans*, 2013 IL 113471, ¶ 10 (citing 725 ILCS 5/122-1(a)(1) (West 2008)). Thus, any claim that the inclusion of the affidavit creates an actual innocence claim in this case would be without merit. In addition, this case involves the defendant's plea of guilty to a single count of possession of methamphetamine with intent to deliver. Nothing in the affidavit is relevant to the elements of that offense or to the factual basis for the defendant's plea of guilty to that offense. In other words, taking the affidavit as true, as we must when we review the first-stage dismissal of the defendant's petition (see *Munz*, 2021 IL App (2d) 180873, ¶ 12), the affidavit nevertheless does not support an actual innocence claim under the facts of this case.

¶ 25                                          III. CONCLUSION

¶ 26    This court's examination of the entire record establishes that this appeal does not present any issues of arguable merit. Therefore, the motion of appointed counsel to withdraw is granted, and the judgment of the circuit court of Wabash County is affirmed.


¶ 27    Motion granted; judgment affirmed.