2024 IL App (2d) 240395-U
No. 2-24-0395
Order filed October 8, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No.   23-CF-158 |
| FRANKLIN E. TOOLEY, | ) ) ) | Honorable Marcy L. Buick, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE MULLEN delivered the judgment of the court.
Justices Hutchinson and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not err in granting the State's petition to deny defendant pretrial release and ordering him detained.

¶ 2    Defendant, Franklin E. Tooley, appeals from orders of the circuit court of De Kalb County (1) granting the State's verified petition to deny him pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), commonly referred to as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act or the Pretrial Fairness Act, and (2) denying his subsequent motion for relief pursuant to Illinois Supreme Court

Rule 604(h)(2) (eff. April 15, 2024). See Pub. Acts 101-652, § 10-255 (eff. Jan. 1, 2023) and 102-1104, § 70 (eff. Jan. 1, 2023) (we will refer to these public acts as the "Acts"). Defendant, through counsel, declined to file a memorandum as permitted by Illinois Supreme Court Rule 604(h)(7) (eff. April 15, 2024). He therefore stands on the arguments raised in his motion for relief, namely that (1) the State failed to prove by clear and convincing evidence that no condition or combination of conditions could mitigate the real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case and (2) the trial court failed to include in its order a summary of its reasons for denying pretrial release as required by section 110-6.1(h)(1) of the Act (725 ILCS 5/110-6.1(h)(1) (West 2022)). We affirm.

¶ 3                                    I. STATEMENT OF FACTS

¶ 4                                         A. Background

¶ 5     On March 24, 2023, defendant was charged by criminal complaint in the circuit court of De Kalb County with various felony sex crimes involving his 13-year-old sister, A.L. Defendant, a 17-year-old minor at the time, was transferred to River Valley Juvenile Detention Center in Joliet. On March 25, 2023, bond was set at $500,000 (10% to apply). Defendant was unable to post bond and remained in detention.

¶ 6     On April 17, 2023, the criminal complaint was superseded by a 29-count indictment charging defendant with: (1) 12 counts of aggravated criminal sexual assault of a person with a physical disability (720 ILCS 5/11-1.30(a)(6) (West 2022)), a Class X felony; (2) 4 counts of aggravated criminal sexual assault of a person with a severe or profound intellectual disability (720 ILCS 5/11-1.30(c) (West 2022)), a Class X felony; (3) 1 count of aggravated kidnapping of a person with a severe or profound intellectual disability (720 ILCS 5/10-2(a)(2) (West 2022)), a Class X felony; (4) 1 count of aggravated kidnapping and committing another felony upon the

victim (720 ILCS 5/10-2(a)(3) (West 2022)), a Class X felony; (5) 3 counts of aggravated criminal sexual abuse of a person with a physical disability (720 ILCS 5/11-1.60(a)(4) (West 2022)), a Class 2 felony; (6) 1 count of aggravated criminal sexual abuse of a family member under 18 years of age (720 ILCS 5/11-1.60(b) (West 2022)); (7) 1 count of aggravated criminal sexual abuse of a person with a severe or profound intellectual disability (720 ILCS 5/11-1.60(e) (West 2022)), a Class 2 felony; (8) 4 counts of sexual relations with a family member (720 ILCS 5/11-11(a) (West 2022)), a Class 3 felony; and (9) 2 counts of aggravated battery of a person with a physical disability (720 ILCS 5/12-3.05(d)(2) (West 2022)), a Class 3 felony.

¶ 7                                    B. Detention Proceedings

¶ 8      On March 12, 2024, defendant, still being held in detention and unable to post bond, filed a "Motion for Reconsideration of Pretrial Release Conditions or, in the alternative Furlough Defendant" (Motion) pursuant to sections 110-7.5 and 110-5(e) of the Code (725 ILCS 5/110-7.5, 110-5(e) (West 2022)). Defendant argued that he should be released with a requirement that he be placed at Nexus-Onarga (Onarga), a juvenile residential and high-school facility specializing in the treatment of sexually problematic behaviors. Attached to the Motion was an email from Onarga confirming defendant's acceptance into the facility.

¶ 9      Also on March 12, 2024, the State filed a "Verified Petition to Deny Defendant Pretrial Release" (Petition). The State urged the trial court to deny defendant pretrial release pursuant to section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2022)) because defendant was charged with (1) a forcible felony as listed in section 110-6.1(a)(1.5) of the Code (725 ILCS 5/110-6.1(a)(1.5) (West 2022)) or any other felony which involves the threat of or infliction of great bodily harm or permanent disability or disfigurement and (2) defendant is charged under a relevant section of Article 11 of the Criminal Code of 2012 (720 ILCS 5/art. 11 (West 2022)). See 725

ILCS 5/110-6.1(a)(5) (West 2022). The State alleged that defendant's pretrial release would pose a real and present threat to the safety of any person or persons or the community.

¶ 10    At a March 18, 2024 hearing, the trial court heard arguments from both parties concerning the Motion and Petition. Prior to the hearing, the State presented the trial court and defense counsel with a police department synopsis of facts. At the hearing, the State proffered as follows. On February 21, 2023, after the family had gone to bed, defendant's 15-year-old sister, S.T., heard her younger 13-year-old sister, A.L., crying out. A.L., who is nonverbal and noncommunicative, has multiple diagnoses of physical and mental conditions which confine her mostly to a wheelchair or bed. A.L.'s room has active cameras to aid her parents in monitoring her nighttime care. S.T. was unable to open A.L.'s locked door and began pounding on it until defendant, appearing flustered, unlocked and opened the door. S.T. observed that the bedroom cameras were disconnected and turned off and that A.L.'s diaper had been removed. Defendant told S.T. that he was attempting to change the diaper. However, family members later told the police that defendant had never changed A.L.'s diaper and was forbidden to do so.  When defendant's parents came to the room, defendant ran from A.L.'s bedroom and hid in the bathroom, appearing upset. At a pre-scheduled appointment the following day, A.L.'s pediatrician gave an assessment of obvious sexual abuse based on the injuries present. Although seminal fluid was found in the victim's diaper, testing determined that it contained no actual DNA.

¶ 11    Further, the State proffered that De Kalb County Sheriff's detectives recorded an interview with defendant at his house. During the interview, defendant admitted to entering A.L.'s room that night, locking the door, turning off the cameras, removing her diaper, and engaging in various acts of penetration with her. He admitted to penetrating her vagina with his fingers, attempting to place

his penis in her vagina, and anally penetrating her with his penis. He admitted this was not the first time.

¶ 12 The State also described a 2020 incident in which defendant attempted a sexual assault against his other sister, S.T.. Defendant told S.T., who is approximately one year younger than defendant, that the only available television was in his bedroom. S.T. went into his bedroom, and while there, defendant locked the door, removed her pants, and attempted to penetrate her. He abandoned his efforts when S.T. fought back and their mother began pounding on the door.

¶ 13 In support of its contention that defendant is a danger to society, the State referenced his multiple acts of sexual penetration with A.L., asserting that "various societal mores and taboos in addition to the law simply isn't something that deters him." The State argued that defendant took steps to avoid detection and that it was not the first time he had attempted to sexually assault another person. The State also noted that defendant's school records documented repeated, inappropriate sexual contacts between defendant and other nonfamilial members, including S.T.'s friends. The State asserted that defendant presents a danger to any woman "he comes across."

¶ 14 Finally, the State communicated concerns about defendant's proposed placement at Onarga. The State contended Onarga is not a state facility, and, in fact, is not secure with unlocked doors and unsecured grounds. The State also believed that Onarga would not be able to accommodate electronic home monitoring (EHM). Because it is a residential-treatment and high-school facility designed to work with juvenile offenders, the State contended it is not an appropriate placement for an offender facing significant adult criminal charges. Given that defendant is now an adult, and not a ward of the court, the State doubted Onarga would have any legal standing to keep defendant from leaving. And, given defendant's potential sentencing of a minimum of 33 years and his "problem controlling his urges," the State argued defendant has a strong motive to

seek more opportunities to satisfy his urges before "he's sent away for a very long time." Additionally, the State questioned whether defendant could abide by the facility's rules, stating that "he wasn't supposed to be in his sister's room that night, either, so just because he's not supposed to be somewhere certainly isn't something that's prevented him in the past." Finally, the State opined that it would be inappropriate to release defendant because "the only place that he can be kept to make sure that he doesn't create any new victims out there is, quite frankly, at the jail."

¶ 15    In response, defense counsel argued that there were conditions that could mitigate any threat posed by defendant's pretrial release. Counsel indicated that the sheriff, despite his standing position that his office does not allow out-of-county EHM, would allow out-of-county EHM if it was ordered by the court and Onarga would accommodate EHM. Counsel cited the facility's distance from the victim and her sister as substantial, and argued that it rendered defendant's threat to them "non-existent." Counsel pointed out that defendant's parents were in court that day and relayed their support for defendant's release to Onarga to receive the treatment he needs. Counsel proffered that the facility had a number of safety protocols and procedures. Specifically, there is an opening delay and an alarm at the facility's doors and staff are trained to stop a resident from leaving "if they believe the person poses a danger." Additionally, the facility is staffed 24/7, there is a 3-to-1 resident-to-staff ratio, there are nightly room checks every 15 minutes, each resident has his own room, no residents are allowed in each other's rooms, there are no cell phones or internet for residents, and the shared bathrooms are only allowed to be used by a single resident at a time. Counsel asserted that Onarga had committed to accommodating whatever conditions the court deemed appropriate to monitor defendant and it would report violations to whoever the court instructed. When asked by the court about the age of individuals at Onarga, counsel responded that

they ranged from approximately 14 to 20 years old. On this point, defense counsel conceded that, due to the school setting, a court-imposed condition of no contact with minors would be impossible to implement.

¶ 16   On April 18, 2024, the trial court granted the State's Petition to deny pretrial release, and denied defendant's Motion. In its ruling, the court considered the nature and circumstances of the charged offenses, the allegations in the indictment, the case record, the sworn synopsis, proffers by the attorneys, arguments by the attorneys, case law, and statutory authority. The court found that the proof is evident or the presumption great that defendant committed a detainable offense. The court noted that defendant did not dispute that finding. The court also found that defendant's pretrial release posed a real and present threat to the safety of a person or persons or the community based on the specific articulable facts of this case. Further, the court found that no condition or combination of conditions of pretrial release could mitigate the real and present threat to the safety of any person or persons or the community based on the specific articulable facts of this case.

¶ 17                     C. Motion for Relief and Notice of Appeal

¶ 18    On June 3, 2024, defendant filed a "Motion for Relief Under the Pretrial Fairness Act" (see Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024)) contesting the trial court's April 18, 2024, detention order. After a hearing on July 1, 2024, the court denied the motion for relief. Defendant timely filed a notice of appeal. The Office of the State Appellate Defender (OSAD) was appointed to represent defendant on appeal. OSAD elected not to file a memorandum under Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024) (providing that the issues raised in the motion for relief are before the appellate court regardless of whether an optional memorandum is filed). Thus, on appeal, we are limited to the arguments made in defendant's motion for relief. The State filed a response in opposition to the appeal.

¶ 19                                    II. ANALYSIS

¶ 20     Article 110 of the Code, as amended by the Acts, abolished traditional monetary bail in favor of pretrial release on personal recognizance or with conditions of release. 725 ILCS 5/110-1.5, 110-2(a) (West 2022). In Illinois, all persons charged with an offense are eligible for pretrial release. 725 ILCS 5/110-2(a), 110-6.1(e) (West 2022). Under the Code, as amended, a defendant's pretrial release may only be denied in certain statutorily limited situations (qualifying offenses). 725 ILCS 5/110-2(a), 110-6.1 (West 2022). For most of the qualifying offenses, upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed the offense (725 ILCS 5/110-6.1(e)(1) (West 2022)), that the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community (725 ILCS 5/110-6.1(a)(1)-(7), (e)(2) (West 2022)) or a high likelihood of willful flight to avoid prosecution (725 ILCS 5/110-6.1(a)(8), (e)(3) (West 2022)), and that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or the risk of the defendant's willful flight from prosecution (725 ILCS 5/110-6.1(e)(3) (West 2022)).

¶ 21     We apply a two-part standard of review to a trial court's decision to detain a defendant. We apply the manifest-weight-of-the-evidence standard to the trial court's factual determinations, including whether the proof is evident or the presumption great that a defendant has committed a qualifying offense, whether a defendant poses a threat or a high likelihood of willful flight, and whether any conditions would mitigate any threat or the risk of willful flight. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. A finding is contrary to the manifest weight of the evidence only if a conclusion opposite that of the trial court's is clearly apparent. *In re Jose A.*, 2018 IL App (2d)

180170, ¶ 17. The ultimate decision of whether a defendant should be detained is reviewed for an abuse of discretion; thus, we will reverse only if no reasonable person could agree with the trial court. *Trottier*, 2023 IL App (2d) 230317, ¶ 13. It is well established that we review the result at which the trial court arrived rather than its reasoning and may affirm on any basis apparent in the record. *People v. Johnson,* 208 Ill. 2d 118, 128 (2003); *People v. Munz,* 2021 IL App (2d) 180873, ¶ 27.

¶ 22    Defendant raises two principal contentions in support of his appeal. First, he contends that the State failed to prove by clear and convincing evidence that no condition or combination of conditions could mitigate the real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case. Second, he asserts that the trial court failed to comply with section 110-6.1(h)(1) of the Code (725 ILCS 5/110-6.1(h)(1) (West 2022)), which requires a court entering a detention order to include a summary of its reasons for denying pretrial release, including why less restrictive conditions would not ensure the safety of the victim or the community. We reject both arguments.

¶ 23                              A. Mitigating Conditions

¶ 24    Defendant first argues that the State failed to prove by clear and convincing evidence that no condition or combination of conditions could mitigate the threat he posed to the safety of any person or persons or the community. In determining whether a specific threat can be mitigated through the imposition of conditions of pretrial release, the trial court considers, among other factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the real and present threat to the safety of any person or the community that would be posed by the defendant's release. 725 ILCS 5/110-5(a) (West 2022).

¶ 25 At the July 1, 2024, hearing on the motion for relief, the court re-affirmed its prior rulings and findings. Accordingly, we may also draw from the court's findings at the April 18, 2024, detention hearing. The trial court found by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case. We cannot find that a conclusion opposite that of the trial court is clearly apparent. The court described the nature and circumstances of the offenses charged. The court noted that defendant was charged with sex offenses involving acts of violence to another individual. It specifically cited the alleged victim's screams at the time of being found alone with defendant in a locked room and the physical injuries found the next day at her doctor's appointment. See 725 ILCS 5/110-5(a)(1) (West 2022). While the court did not explicitly comment on the weight of the evidence against defendant, it referenced defendant's statements to the investigating officer, in which defendant admitted to repeatedly sexually assaulting A.L., and the account of S.T., a witness who heard the victim's screams and found defendant alone with A.L. See 725 ILCS 5/110-5(a)(2) (West 2022). Regarding the history and characteristics of defendant, the trial court found that defendant's alleged actions of turning off the bedroom cameras and claiming to change A.L.'s diaper to be aggravating factors that indicated his actions were "premeditated and deceitful." See 725 ILCS 5/110-5(a)(3) (West 2022). The trial court also found, based on defendant's statements that he had repeatedly sexually assaulted A.L., that defendant was "likely impulsive" and "likely unable to control his actions." See 725 ILCS 5/110-5(a)(3) (West 2022). From the parents forbidding defendant to change A.L.'s diaper and information that they knew defendant was sexually active, the court inferred that the parents likely did not want him alone with A.L. because they felt that he was likely a danger to her. See 725 ILCS 5/110-5(a)(4) (West 2022). The trial court found that defendant is a threat to

the personal safety of A.L., referencing that she is noncommunicative, confined to a wheelchair, and unable to defend herself. See 725 ILCS 5/110-5(a)(4) (West 2022). The trial court concluded that "the defendant's alleged deceitful actions of repeated abuse against his 13-year-old sister, abuse that is alleged to be violent causing physical injuries to the alleged victim and likely causing emotional trauma to A.L., make him a risk to the community."

¶ 26    Defendant asserts that the trial court's ruling on this proposition was influenced by its erroneous finding that he lacked concern for A.L. According to defendant, "there was nothing in the record regarding Defendant's lack of concern for the victim." We reject this argument. The trial court noted that the synopsis reflects that defendant continued to abuse A.L. even though he was aware that he was physically injuring her. The trial court acknowledged defendant's statements to investigators of repeatedly sexually assaulting A.L. The trial court referenced the witness account of A.L.'s screams when she was found in the locked bedroom with defendant. Further, the trial court detailed A.L.'s injuries, assessed by her pediatrician, as including vaginal trauma and abrasions and perineal tears and lacerations. Based on this circumstantial evidence and additional evidence proffered by the State, the trial court's finding that defendant lacked concern for the victim is not against the manifest weight of the evidence.

¶ 27    Relatedly, defendant argues that the trial court failed to properly consider specific conditions of the proposed placement at Onarga that would have mitigated any threat to the victim or the community. These mitigating factors, according to defendant, included EHM while at Onarga, authorization to stay at the facility without weekend or holiday breaks, security measures staff could take to prevent him from leaving, Onarga's agreement to report any violations, that any contact with minors at the facility would be "almost guaranteed to be supervised," the 3-1 resident to staff ratio, the 24/7 staffing, nightly room checks, facility cameras, and the prohibition of cell

phones and internet access. However, the trial court cogently communicated its concerns with the proposed Onarga placement at several hearings. The court concluded that Onarga, as a residential facility, was not secure and could not prevent defendant from leaving without authorization. It opined that placement at Onarga would result in defendant having unsupervised contact with minors, and, in fact, might give defendant "an opportunity to prey on or abuse younger residents." Thus, despite defendant's contention, the trial court did weigh the mitigating factors presented by defendant, but found they would not adequately mitigate the threat defendant posed to the named victim and to the community. We therefore reject defendant's argument.

¶ 28    Defendant further asserts that the State failed to provide valid reasoning or evidence why EHM at Onarga would not have mitigated any threat to the victim. Here, defendant truncates the finding of the court, where he was found to pose a real and present threat to the safety of not only the victim, but also to other persons or the community, based on the specific articulable facts of this case. Putting that aside, defendant's argument fails upon further review. In support of his argument, defendant cites *People v. Turner*, 2024 IL App (1st) 232082-U, ¶ 21, for the proposition that "[a]side from simply restating the alleged facts that resulted in the charges, the State must at a minimum present some discussion, reasoning, and or evidence as to why specific alternative conditions will not work." Defendant's reliance on this case is unpersuasive, as *Turner* indicates that the appellate court stated, "[b]ased on the record before [it], where there were *no* alternatives to detention presented or *argument made as to why such alternatives were unsuitable*, we cannot find that the State met its burden under the Code." (Emphasis added.) *Turner*, 2024 IL App (1st) 232082-U, ¶ 21. Defendant's case is easily distinguishable from *Turner* because the State offered several reasoned arguments why placement at Onarga with EHM was unsuitable. At the March 18, 2024, hearing, the State proffered evidence from school records that documented repeated

inappropriate sexual contact between defendant and other nonfamilial members aside from the two sisters, thus calling into question the idea that defendant would not be tempted to re-offend if he was not around his sisters. In addition to the observation that Onarga is not a secure facility, the State questioned its suitability because defendant is an adult, not a ward of the state, and thus surmised that it was unclear whether Onarga would have any grounds at all to keep him within the facility against his will. As for EHM, the State was not convinced the sheriff would permit EHM at the facility, and, even if it did, the State questioned how that would prevent defendant from attempts to "violate or offend against other people who might be living there." We find that the State did argue and present evidence beyond, as defendant argues, merely "point[ing] out that Onarga is not a locked facility." Thus, this argument fails.

¶ 29                    B. Trial Court's Findings

¶ 30     In his final argument, defendant contends that the court violated section 110-6.1(h)(1) of the Code (725 ILCS 5/110-6.1(h)(1) (West 2022)), which requires:

> "a written finding summarizing the court's reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." 725 ILCS 5/110-6.1(h)(1) (West 2022).

Specifically, defendant contends that the detention order fails to comply with the Act because "[n]owhere in the order does it state why less restrictive conditions would not ensure the safety of the victim or the community." It is true that the written detention order did not include a summary of reasons for denying defendant pretrial release. Nonetheless, we do not find a violation of the written-findings requirement here. In *People v. Andino-Acosta*, 2024 IL App (2d) 230463, ¶ 19, this court concluded that "an explicit and individualized oral ruling may satisfy section 110-

6.1(h)(1)," and "in assessing the sufficiency of a trial court's findings, its written findings must be read in conjunction with its oral pronouncements."

¶ 31 We therefore consider whether the trial court satisfied the standard of an explicit and individualized ruling in its oral pronouncements. Indeed, we find that at the April 18, 2024, detention hearing, the trial court offered an analysis of the factors concerning the determination of dangerousness, in accord with section 110-6.1(g) of the Act (725 ILCS 5/110-6.1(g) (West 2022)) and clearly stated the reasons why it found less restrictive conditions would not avoid the threat to safety. Accordingly, the intent of the Act's written requirement, to "apprise the defendant of the reasons for its ruling and to accommodate review under the Act," has been satisfied here. See *Andino-Acosta,* 2024 IL App (2d) 230463, ¶ 22; *People v. Vance,* 2024 IL App (1st) 232503, ¶ 33 ("[T]ranscribed oral ruling provided a more than sufficient basis for appellate review and explained to [the] defendant the court's reasoning."); *People v. Hodge,* 2024 IL App (3d) 230543, ¶ 11, (finding that the trial court's hearing with its order was sufficient to fully consider the court's decision). We reject defendant's final argument.

¶ 32 In short, we do not find that the trial court's factual findings were against the manifest weight of the evidence, or that its ultimate decision to detain defendant constituted an abuse of discretion.

¶ 33                                        III. CONCLUSION

¶ 34 For the reasons set forth above, we affirm the judgment of the circuit court of DeKalb County.

¶ 35 Affirmed.