NOTICE

Decision filed 01/27/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240444-U

NO. 5-24-0444

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 20-CF-1039 |
| | ) | |
| GERRIN L. MASSIE, | ) | Honorable |
| | ) | Neil T. Schroeder, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Justices Moore and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court properly denied defendant's motion to dismiss on speedy trial grounds or to withdraw his guilty plea where the record showed only 76 days' delay attributable to the State, plea counsel's prior representation of the victim did not create a conflict of interest, and defendant was properly admonished. As any argument to the contrary would lack merit, we grant defendant's appointed counsel on appeal leave to withdraw and affirm the circuit court's judgment.

¶ 2    Defendant, Gerrin L. Massie, appeals the circuit court's order denying his motion to withdraw his guilty plea. His appointed appellate counsel, the Office of the State Appellate Defender (OSAD), concludes that there is no reasonably meritorious argument that the court erred in doing so. Accordingly, it has filed a motion for leave to withdraw as counsel on appeal and a supporting memorandum. See *Anders v. California*, 386 U.S. 738 (1967). OSAD has notified defendant of its motion. This court has provided him with an opportunity to respond and he has

1

filed a response. However, after considering the record on appeal, OSAD's motion and supporting memorandum, and defendant's response, we agree that there is no issue that could support an appeal. Accordingly, we grant OSAD leave to withdraw and affirm the trial court's judgment.

¶ 3                                    BACKGROUND

¶ 4     Defendant was charged with first degree murder and other offenses in the death of Kenneth Stanley Jr. on May 12, 2020. The State subsequently added an additional count of harassing a witness, alleging that defendant communicated from jail with Tahjae Simms to induce her to change her story.

¶ 5     Brian Polinske originally represented defendant. After the State disclosed that another of Polinske's clients might testify against defendant, Robert Elovitz replaced Polinske.

¶ 6     On October 27, 2022, the parties announced a partially negotiated agreement by which defendant would plead guilty to knowing murder in exchange for the State dismissing the remaining charges and agreeing to a 40-year sentencing cap. The State would also remove the firearm add-on enhancement.

¶ 7     The court admonished defendant of the charges and agreed to be bound by the 40-year sentence cap. It told defendant that the sentencing range was thus 20 to 40 years, of which he would have to serve 100%. Defendant said that he understood. He informed the court that he was 25 years old, had completed the twelfth grade, could read, write, and understand English, was not under the influence of alcohol or drugs, and was not suffering from any physical or mental disability. The court provided the required Illinois Supreme Court Rule 402 (eff. July 1, 2012) admonishments.

¶ 8     The State provided a factual basis, stating that Tahjae Simms would testify that on May 12, 2020, she and the defendant were driving through Venice when defendant saw a vehicle with

2

Kenneth Stanley Jr., Erick Buntyn, and Jerard McCoy in it. Defendant said that "those people were on his block." They drove off. They parked at a house, which defendant entered before returning to the car.

¶ 9    Simms would further testify that they returned to where they had previously seen the other car. Defendant, after getting out of Simms's car, made a statement to the effect that the other men were still on his block and asking Simms to drive around the block. As he walked down the street, Simms drove around the block and picked him up on the same block.

¶ 10    Various officers of the Illinois State Police would testify that they located two doorbell cameras that had captured the incident. They would show the defendant get out of Simms's car, walk to the back of the car with Stanley in it, and bludgeon Stanley to death. That vehicle drove off, and defendant ran down to the end of the block and got in the car with Simms, who drove away. The defense stipulated to the factual basis.

¶ 11    The court asked defendant whether any threats or force had been used to induce his plea or whether anything had been promised to him other than what was outlined in the plea agreement. Defendant replied in the negative. He affirmed that he was entering the plea freely and voluntarily and that he had discussed the plea with Elovitz. The court found that the plea was knowing and voluntary and found a factual basis. Accordingly, it accepted the plea, entered a finding of guilt, and ordered a presentence investigation.

¶ 12    On December 8, 2022, defendant filed a *pro se* document entitled "Legal Work," saying that he was "not satisfied with [the] agreement" and "refuse[d] to go forward with this process." He alleged that Elovitz had told him he could get him 20 to 25 years, but that if he went to trial, he could get a life sentence with the firearm enhancement.

¶ 13    Defendant alleged that Elovitz had presented him with a document stating that Elovitz had previously represented Stanley. Defendant "gave a false signature, because I didn't know if he was trying to pull a fast one." Defendant said that Elovitz would not get him a psychiatric evaluation, defendant had a defense worthy of consideration, and he wanted a change of venue because his name had been "defamed" in Madison County.

¶ 14    The court allowed Elovitz to withdraw. After the public defender and Donna Polinske, who had helped her husband, Brian, when he represented defendant earlier in the case, were conflicted out, the court appointed Calvin Fuller as defense counsel. Following a hearing, the court sentenced defendant to 32 years' imprisonment.

¶ 15    Fuller filed a motion to dismiss based on a speedy trial violation or, alternatively, to withdraw defendant's plea, alleging that Elovitz had labored under a conflict of interest. The motion cited *People v. Yost*, 2021 IL 126187, ¶ 66, for the proposition that a *per se* conflict exists where " 'defense counsel has a contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution.' " Acknowledging that it was "perhaps an extension of the principles set forth in *Yost*," the motion argued that Elovitz had a "contemporaneous association" with "an entity assisting the prosecution" because Stanley's family had assisted the prosecution "in multiple respects" in this case.

¶ 16    The motion further alleged that Elovitz did not mention the potential conflict to defendant until immediately before the plea hearing and that Elovitz then threatened to quit if defendant did not take the plea. The motion included a certificate of compliance with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017).

¶ 17    At a March 27, 2024, hearing, defendant's grandfather, Gerald Massie, testified that, after Brian Polinske withdrew, Gerald hired Elovitz using the remainder of the money he had originally

4

paid Polinske. Gerald acknowledged that Elovitz told him that he had previously represented Stanley but said that it would not create a conflict of interest. Gerald testified that he signed a retainer agreement with Elovitz containing an acknowledgment to that effect.

¶ 18    Defendant testified that, on the day he entered the plea, Elovitz put a document in front of him saying something about his having previously represented Stanley. Defendant acknowledged signing it but said that he signed it "with a false signature," believing that this would keep it from having any legal effect. Elovitz only told him about the State's offer right before they were to come into court that day. Elovitz said that if he went to trial, he would lose, based on Simms's expected testimony. Defendant felt coerced, because Elovitz told him that he could get life in prison if he went to trial and lost. Elovitz also told him that if he did not take the plea, Elovitz would quit the case. According to defendant, he had only had five minutes to decide what to do after Elovitz told him about his prior representation of Stanley.

¶ 19    The State called Elovitz, who testified that he represented Stanley from 2011 through 2013, at which point Stanley pleaded guilty. Elovitz never had any further relationship with Stanley or his family. After realizing that he had previously represented the victim, Elovitz consulted an ethics attorney, who advised him that he should disclose the matter.

¶ 20    Elovitz disclosed the issue to Gerald Massie and to defendant the first time he visited him in jail. Defendant told him that he did not have a problem with Stanley or with Elovitz having represented Stanley in the past. Defendant signed the waiver in the jail on December 8, 2022. Elovitz denied threatening to quit if defendant did not plead guilty. He discussed the plea negotiations with defendant numerous times in the jail before the plea hearing.

¶ 21    The court denied the motion. The court discerned no speedy-trial violation, finding only about 70 days attributable to the State. It further noted that it had thoroughly admonished defendant

5

pursuant to Rule 402 and he never wavered or equivocated. The court found no conflict that needed to be disclosed but, out of an excess of caution, Elovitz had done so anyway. Finding defendant's testimony incredible, the court did not believe that Elovitz promised defendant that he would get no more than 25 years in prison or threatened to quit if defendant did not take the plea. Defendant filed a timely notice of appeal.

¶ 22                                  ANALYSIS

¶ 23    OSAD concludes that there is no reasonably meritorious argument that reversible error occurred in the denial of defendant's motion. OSAD concludes that the circuit court properly found that Elovitz did not have a *per se* conflict of interest and, in any event, defendant and his grandfather waived it. Further, the court properly found no speedy-trial violation. Finally, Fuller filed a certificate that complied with Rule 604(d). We agree.

¶ 24    A defendant has no absolute right to withdraw his guilty plea. *People v. Hughes*, 2012 IL 112817, ¶ 32. Rather, he must show a manifest injustice under the facts involved. *Id.* Withdrawal is appropriate where the plea was entered through a misapprehension of the facts or of the law or where there is doubt as to the guilt of the accused and justice would be better served through a trial. *Id.*

¶ 25    A motion to withdraw plea may be properly denied "where the trial record refutes a defendant's assertions that his plea was not" knowing and voluntary. *People v. Artale*, 244 Ill. App. 3d 469, 475 (1993). Moreover, a voluntary guilty plea waives all nonjurisdictional errors and irregularities, including constitutional ones. *People v. Jones*, 2021 IL 126432, ¶ 20.

¶ 26    Defendant's guilty plea thus waived his claims of a speedy-trial violation and a conflict of interest by defense counsel. In any event, both claims are without merit.

6

¶ 27    "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant ***." 725 ILCS 5/103-5(a) (West 2020). However, if a delay is occasioned by the defendant, the statutory period is tolled. *Id.* "Delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record." *Id.*

¶ 28    Here, the court found that only about 70 days of delay were attributable to the State. OSAD counts 76 days: an initial 54-day continuance from May 21, 2020, to July 13, 2020, and a continuance from September 14, 2022, to October 5, 2022. All other continuances were either requested or agreed to by the defense.

¶ 29    In his response, defendant insists that he told his lawyer that he would not agree to any continuances and was ready for trial immediately. Generally, a defendant is bound by the actions of his attorney. *People v. Teen*, 2023 IL App (5th) 190456, ¶ 30 (citing *People v. Kaczmarek*, 207 Ill. 2d 288, 297 (2003)). Accordingly, when defense counsel requests a continuance, the delay is attributable to defendant. *People v. Bowman*, 138 Ill. 2d 131, 141 (1990). The record need not affirmatively show that counsel consulted with and received his client's consent to a continuance. *Id.* at 142. Rather, the defendant must affirmatively repudiate his attorney's allegedly unauthorized act. The failure to do so promptly upon receiving knowledge of such an act effectively ratifies it. *Teen*, 2023 IL App (5th) 190456, ¶ 30. Here, defendant never objected on the record to any request for a continuance and therefore presumptively ratified his lawyer's actions.

¶ 30    Defendant further argues that, because the record on appeal does not include transcripts for several hearings, the State cannot establish that all continuances were attributable to him. However, a defendant bears the burden of affirmatively establishing a speedy-trial violation.

7

*People v. Kliner*, 185 Ill. 2d 81, 114 (1998). It is a *defendant's* duty, as the appellant, to present a complete record on appeal. In the absence thereof, any doubts will be resolved against him. *Teen*, 2023 IL App (5th) 190456, ¶ 33.

¶ 31    OSAD further concludes that the circuit court properly rejected defendant's contention that Elovitz labored under a conflict of interest. A criminal defendant's sixth amendment right to effective assistance of counsel includes the right to conflict-free representation. *People v. Yost*, 2021 IL 126187, ¶ 36. The Illinois Supreme Court has recognized several situations that are so likely to engender conflicting loyalties that they create a *per se* conflict of interest. In other words, a defendant need not demonstrate specific instances of conduct by the attorney that prejudiced the defendant. Counsel's prior representation of the defendant's victim, however, is not a *per se* conflict when that representation is not contemporaneous and "concluded long before" the case at issue. *Id.* ¶ 59. Even where such a conflict does exist, a defendant may waive it. *People v. Spreitzer*, 123 Ill. 2d 1, 17 (1988) ("we have reversed convictions unless the record reflects that the defendant has been made aware of the conflict and has knowingly waived his right to conflict-free counsel").

¶ 32    Here, it is undisputed that Elovitz's representation of Stanley concluded nearly a decade before this case began. Thus, no *per se* conflict existed. Moreover, Elovitz disclosed his prior representation of the victim to defendant and his grandfather, and both expressly waived it. While defendant attempted to claim that his signature was not genuine, he acknowledged that Elovitz explained the potential conflict to him prior to his guilty plea.

¶ 33    Even where no *per se* conflict exists, a defendant may establish an actual conflict if he can identify a specific deficiency in counsel's strategy, tactics, or decision making that is attributable to an alleged conflict. Speculative allegations and conclusory statements are insufficient. *Yost*, 2021 IL 126187, ¶ 38.

¶ 34 Here, although postplea counsel included perfunctory allegations of an actual conflict, the claim merely reasserted facts that had already been alleged in connection with the *per se* claim. In fact, the motion specifically eschewed any claim that Elovitz's performance on the plea was deficient, alleging:

> "The defendant is in no manner suggesting that attorney Elovitz did not negotiate a reasonable and what may be considered a well-bargained plea negotiation, as attorney Elovitz was able to convince the State to forgo the gun enhancement and also brokered with the State to dismiss multiple other charges associated with 20 CF 1039, which could have potentially placed defendant in a quite precarious position if convicted."

¶ 35 The record simply does not support a claim that Elovitz labored under a conflict of interest based on his representation of the victim nine years before the offense in question.

¶ 36 OSAD further concludes that no meritorious claim exists that the circuit court failed to properly admonish defendant. Defendant's motion to withdraw the plea does not appear to claim any specific defect in the court's admonishments prior to the plea, and the record would not support such a claim in any event.

¶ 37 The court admonished defendant of the nature of the charge, the possible sentences, that he did not have to plead guilty, and that, if he entered the plea, he would waive his right to a trial and associated rights. Defendant stated that he understood. See Ill. S. Ct. R. 402(a) (eff. July 1, 2012).

¶ 38 The court further found the plea voluntary, asking defendant whether anyone forced or threatened him to induce his plea, or had promised him anything other than what was represented by the terms of the agreement. The court asked whether he was entering the plea freely and voluntarily and whether he had discussed the plea with his attorney. Based on defendant's answers, the court reasonably found that the plea was voluntary. See Ill. S. Ct. R. 402(b) (eff. July 1, 2012).

9

¶ 39   Finally, as noted, the State presented a detailed factual basis, which the court reasonably found sufficient. Ill. S. Ct. R. 402(c) (eff. July 1, 2012). Thus, there is no meritorious argument that the court failed to comply with Rule 402.

¶ 40   Finally, OSAD concludes that postplea counsel complied with Rule 604(d). The rule requires that an attorney representing a defendant on a postplea motion

> "shall file with the trial court a certificate stating that the attorney has consulted with the defendant either by phone, mail, electronic means or in person to ascertain defendant's contentions of error in the sentence and the entry of the plea of guilty, has examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." Ill. S. Ct. R. 604(d) (eff. July 1, 2017).

Here, Fuller filed a certificate closely tracking the rule's language.

¶ 41   Defendant makes several additional claims in his response. He contends that plea counsel was ineffective for failing to interview "state witness" Jerard McCoy, failed to present "Tahjae Simms exonerating affidavit" or to seek suppression of the security videos. Each of these claims was waived by defendant's guilty plea. See *Jones*, 2021 IL 126432, ¶ 20. In any event, defendant offers no evidence or argument in support.

¶ 42   " 'To establish that a defendant was deprived of effective assistance of counsel, [he] must establish both that his attorney's performance was deficient and that the defendant suffered prejudice as a result.' " *People v. Manning*, 227 Ill. 2d 403, 412 (2008) (quoting *People v. Pugh*, 157 Ill. 2d 1, 14 (1993)). Defendant cannot establish prejudice.

¶ 43 The State's factual basis mentioned McCoy as an occupant of the car in which Stanley was killed. But it did not indicate that the State intended to call him as a witness. Defendant does not detail what he would have said if he did testify. Thus, we cannot conclude that counsel was ineffective for failing to interview him.

¶ 44 Similarly, defendant does not indicate when Simms's alleged affidavit was filed or what it said. He does not cite to any place in the record where it appears. Thus, we cannot evaluate whether defendant was prejudiced by counsel's failure to introduce it.[1]

¶ 45 Defendant does not suggest any basis on which to suppress the surveillance videos. He argues that the time-stamp was off by an hour, which perhaps could be explained by the failure to adjust for daylight saving time. In any event, a discrepancy in the time, without more, is not a basis to suppress the videos. In its factual basis, the State asserted that Illinois State Police officers could establish a sufficient foundation for the videos and the defense agreed.

¶ 46 Finally, defendant argues that postplea counsel was ineffective for relying on *Yost*, which was contrary to his position. Counsel had an ethical obligation to cite controlling authority contrary to his position. Ill. R. Prof'l Conduct (2010) R. 3.3(a)(2) (eff. Jan. 1, 2010). Having done so, he crafted a creative argument in which *Yost* actually supported his position. In any event, we are aware of no authority—and defendant cites none—supporting defendant's position that counsel's representation of the victim nearly a decade earlier created a *per se* conflict of interest. The alternative would have been to cite no authority at all in support of defendant's argument. Thus, defendant was not prejudiced.

---

[1]That defendant was charged with a criminal offense for communicating with Simms in an effort to persuade her to change her story might provide a strategic explanation for counsel's reluctance to rely on Simms's alleged recantation.

11

¶ 47                                    CONCLUSION

¶ 48    As this appeal presents no issue of arguable merit, we grant OSAD leave to withdraw and

affirm the circuit court's judgment.


¶ 49    Motion granted; judgment affirmed.