NOTICE

Decision filed 05/04/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250336-U

NO. 5-25-0336

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Madison County. |
| v. | ) ) | No. 20-CF-1039 |
| GERRIN L. MASSIE, | ) ) | Honorable Neil T. Schroeder, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BOLLINGER delivered the judgment of the court.
Presiding Justice Cates and Justice Clarke concurred in the judgment.

**ORDER**

¶ 1     *Held*: The circuit court did not err in summarily dismissing defendant's *pro se* postconviction petition. Because no argument to the contrary would have arguable merit, defendant's appellate counsel is granted leave to withdraw, and the judgment of the circuit court of Madison County is affirmed.

¶ 2     Defendant, Gerrin L. Massie, appeals the judgment of the circuit court of Madison County that summarily dismissed his *pro se* postconviction petition. The Office of the State Appellate Defender (OSAD) was appointed as defendant's appellate counsel. OSAD has concluded that this appeal lacks arguable merit and, on that basis, has filed a motion for leave to withdraw as counsel, pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), along with a supporting memorandum of law. OSAD properly served defendant with notice. This court gave defendant the opportunity to file a response to OSAD's motion. Defendant did not file a response. We have reviewed OSAD's

1

*Finley* motion and memorandum, and the entire record on appeal. We agree with OSAD's assessment of this appeal. We therefore grant OSAD's motion for leave to withdraw, and affirm the judgment of the circuit court.

¶ 3                                    I. BACKGROUND

¶ 4        On October 27, 2022, defendant entered a plea of guilty to one count of first degree murder. In exchange for defendant's plea, the State agreed to dismiss other felony charges—including another count of first degree murder—in this case, felony charges in two additional cases, and misdemeanor and traffic charges in four additional cases. The State also agreed "to remove any reference to a firearm" from the first degree murder charge to which defendant was pleading guilty, "replacing that with the word bludgeon." The State further "would agree to forego any prosecution that resulted from any of defendant's conduct while he was incarcerated" on the present charges, which included "things such as witness tampering, solicitation of witness tampering, solicitation of murder of a witness for hire, [and] obstructing justice." Defendant's plea counsel added that the State agreed to cap the recommended sentence at 40 years.

¶ 5        The circuit court stated that it had reviewed defendant's criminal history and agreed to bind itself to the agreement. The circuit court admonished defendant as to the charges he faced, the possible penalties for those charges, the complete terms of the plea agreement, and the rights defendant was foregoing by pleading guilty. The State provided a factual basis for the plea, which included the testimony of Tahjae Simms and Illinois State Police investigators. The State asserted that Simms would testify that she and defendant were driving through Venice, at which point defendant saw a parked vehicle with several individuals inside, including the victim. The State further asserted that Illinois State Police investigators would testify that they discovered two Ring doorbell camera videos that captured the events surrounding the murder, and showed defendant's

involvement in it. Specifically, officers would testify that the videos showed defendant get out of Simms' car, walk down to the back of the car with the victim in it, and "bludgeon [the victim] to death." The videos would then show defendant running down to the end of the block and getting back in the car driven by Simms, who drove away. Defendant's plea counsel agreed that the State's recitation of the factual basis was "substantially *** the evidence the State could prove should the matter proceed to trial."

¶ 6    The circuit court further admonished defendant to ensure defendant's plea was intelligently, knowingly, and voluntarily made. The circuit court then accepted defendant's plea, entered a finding of guilt, and entered judgment on that finding. Defendant thereafter filed a *pro se* document in which he expressed dissatisfaction with the performance of plea counsel. New counsel was appointed, and on June 22, 2023, defendant's sentencing hearing was held. Prior to taking evidence, the circuit court advised defendant of his appeal rights, including that if defendant was not satisfied with the outcome of the proceedings, defendant would have to file a written motion to withdraw his guilty plea within 30 days of the date of the sentencing hearing.

¶ 7    In aggravation, the State's evidence included the two Ring doorbell camera videos discussed above. An investigator described some of the events in the videos as the videos were played, then paused, for the circuit court. The investigator testified that defendant admitted he was the individual seen in a zoomed-in still image captured from one of the videos. In argument, the State asked for a sentence of 40 years, describing the killing as "an execution-style murder in a residential neighborhood in the middle of the day." Defense counsel asked for a sentence of 20 years. The circuit court discussed the factors in aggravation and mitigation, then stated "the most disturbing thing about this *** is the recordings and the fact that [defendant] fired off 15 rounds in a matter of seconds at an occupied vehicle," which caused the death of the victim. The circuit

3

court sentenced defendant to 32 years in prison, to be served at 100% and to be followed by 3 years of mandatory supervised release. Defendant thereafter moved to withdraw his guilty plea. Following a hearing, defendant's motion was denied.

¶ 8    Defendant's conviction and sentence were affirmed on direct appeal. *People v. Massie*, 2025 IL App (5th) 240444-U, ¶¶ 2, 48, 49. In that appeal, OSAD filed a motion for leave to withdraw as counsel in which it contended there was no reasonably meritorious argument that reversible error occurred in the denial of defendant's motion. *Id.* ¶ 23. This court noted that defendant's plea of guilty waived his claims regarding alleged violations of his speedy trial rights and an alleged conflict of interest on the part of plea counsel, then explained why those claims would be without merit even if they were not waived. *Id.* ¶¶ 26-35. This court agreed with OSAD that no other potentially meritorious claims were raised by defendant in his motion to withdraw his guilty plea, or on appeal from the denial of that motion. *Id.* ¶¶ 36-40. We further found that additional claims raised by defendant in his response to OSAD's motion for leave to withdraw as counsel were waived by defendant's guilty plea, and would be without merit even if they were not waived. *Id.* ¶¶ 41-46.

¶ 9    On February 21, 2025, defendant filed a *pro se* verified petition (petition) pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)). Therein, defendant alleged a "claim of actual innocence based on newly discovered evidence." In support of his claim, defendant contended that "[s]ubsequent to the trial and post-trial motions *** Nicholas Rickman III *** signed a sworn affidavit regarding" the circumstances surrounding the death of the victim.

¶ 10    The petition was accompanied by Rickman's handwritten affidavit, which was sworn but not notarized. In the affidavit, which was dated August 20, 2024, Rickman averred that on the date of the killing, May 12, 2020, he was waiting in a car for defendant to bring him "some weed."

4

Rickman averred that defendant "said he was about to leave Granite City." He averred that when defendant arrived on foot, defendant approached the passenger side of Rickman's car. Rickman averred that when he told defendant the passenger door was broken, defendant told Rickman to hurry, then defendant "came around to the driver side" of Rickman's car. Rickman averred that "in the middle of the exchange a red laser appeared and it was coming from" a white truck that had parked in the area while Rickman was waiting for defendant. Rickman averred that "[i]n self-defense and defense of myself," defendant "fired over 10 shots at the truck[,] causing it to speed off towards Madison."

¶ 11 In the petition, defendant claimed Rickman's affidavit showed that defendant "simply shot in the direction of" the men in the white vehicle, "with the intent to startle them" so that defendant and Rickman could flee. In the affidavit, Rickman averred that he did not come forward earlier because Rickman feared for himself and his family, based upon threats that he alleged had been made against anyone who supported defendant. Defendant filed his own affidavit, which was notarized but not sworn. Defendant's affidavit was dated October 15, 2024, and was consistent with the allegations in Rickman's affidavit with regard to the phone conversation setting up the drug transaction, the broken passenger door, defendant's movement around the car to the driver side, the "red laser" during the drug transaction, and the shooting that followed. In the petition, defendant made the additional claim that Rickman's affidavit, along with defendant's affidavit, demonstrated that there was "no factual basis to support [defendant's] guilty plea to the offense of first degree murder."

¶ 12 On April 4, 2025, the circuit court summarily dismissed the petition in a four-page order. The circuit court concluded that defendant's claim that there was no factual basis for his guilty plea was frivolous and patently without merit. The circuit court stated that the claim was positively

5

rebutted by the record, and was waived because it was known to defendant at the time of defendant's motion to withdraw his guilty plea, and at the time of his direct appeal, but was not raised in either proceeding. The circuit court also rejected defendant's actual innocence claim, concluding that Rickman's statement "could have been discovered earlier through the exercise of due diligence," because assuming the information in the affidavit was true, defendant "was well aware of the identity of Rickman prior to pleading guilty." Moreover, the circuit court reasoned, because defendant "had been communicating with Rickman by phone prior to the shooting, [defendant] was also aware of how to contact Rickman."

¶ 13 The circuit court added that, "more importantly, the claim of actual innocence [was] overwhelmingly rebutted by the record." The circuit court recounted the information in the affidavits, then stated that the court had "once again viewed" the two Ring doorbell camera videos. The circuit court stated that in contravention of the assertions in the affidavits, the video evidence "clearly" showed defendant "without delay, walking down the sidewalk *** crossing the street, standing behind a parked car *** and immediately shooting fifteen times in the direction of a white vehicle with headlights on which was parked directly in front of the parked car [defendant] was standing behind." The circuit court stated that defendant "never approached any other car and certainly never approached the passenger side of a car alleged to be occupied by Rickman, and was never directed to walk around to the driver's side of the same car." The circuit court ruled that, as a result, the actual innocence claim was "clearly frivolous or patently without merit." The circuit court therefore summarily dismissed the petition, and this timely appeal followed.

¶ 14                                    II. ANALYSIS

¶ 15 Defendant appeals the circuit court's judgment that summarily dismissed the petition. As noted above, OSAD has filed a *Finley* motion to withdraw as counsel. In the legal memorandum

6

that accompanies its motion, OSAD raises one potential issue: whether the circuit court erred when it summarily dismissed the petition. However, OSAD concludes there is no merit to that issue. For the reasons that follow, we agree with OSAD.

¶ 16    The Act provides a means by which a criminal defendant may assert that, in the proceedings that resulted in the defendant's conviction, there occurred a substantial denial of the defendant's rights under the United States Constitution, the Illinois Constitution, or both. *People v. Evans*, 2013 IL 113471, ¶ 10 (citing 725 ILCS 5/122-1(a)(1) (West 2008)). A proceeding under the Act is not a substitute for a direct appeal; rather, it is a collateral proceeding which attacks a final judgment. *People v. Munz*, 2021 IL App (2d) 180873, ¶ 11. The purpose of a proceeding under the Act is to allow inquiry into constitutional issues related to the conviction or sentence that were not, and could not have been, determined on direct appeal. *Id.* Accordingly, the doctrine of *res judicata* bars a defendant from raising in a postconviction petition issues that were actually decided in the defendant's direct appeal. *People v. Clark*, 2023 IL 127273, ¶ 41. Issues that could have been raised in the defendant's direct appeal, but were not, are barred by the doctrine of forfeiture. *Munz*, 2021 IL App (2d) 180873, ¶ 28.

¶ 17    At the first stage of proceedings under the Act, the circuit court must determine whether the petition is frivolous or patently without merit. *Id.* ¶ 12. The petition may present only a limited amount of detail, and its allegations are to be liberally construed and taken as true so long as they are not affirmatively rebutted by the record. *Id.* The petition need not set forth the claims in their entirety or include legal arguments or citations to legal authority. *Id.* The threshold that a postconviction petition must meet to survive the first stage of review is low because most postconviction petitions are drafted by *pro se* petitioners. *Id.* Nevertheless, *res judicata* and forfeiture are well-established reasons to summarily dismiss a petition at the first stage of

7

proceedings. *Id.* ¶ 28. A petition also is frivolous and patently without merit, and therefore must be dismissed at the first stage of proceedings, if the petition has no arguable basis in either law or fact, such as when it is based on an indisputably meritless legal theory or fanciful factual allegations. *Id.* ¶ 13. An indisputably meritless legal theory is one that is completely contradicted by the record, whereas fanciful factual allegations may be fantastic or delusional. *Id.* We review *de novo* the first-stage dismissal of a petition. *Id.* ¶ 14. In so doing, we review the circuit court's judgment, not the reasons cited, and we may affirm on any basis supported by the record if the judgment is correct. *Id.* ¶ 27.

¶ 18     In this case, our *de novo* review leads us to reach the same conclusion reached by the circuit court: defendant's actual innocence claim is affirmatively rebutted by the record, and is therefore frivolous and patently without merit. See *id.* ¶¶ 12-13. We have reviewed the video evidence, which is included in the record on appeal, and have found that it completely rebuts the allegations made by Rickman and defendant in their affidavits. As the circuit court aptly noted, both videos show defendant quickly walking down the sidewalk, crossing the street, stopping behind a parked car, and immediately firing into the white vehicle that was occupied by the victim and two other people. Defendant does not, at any point, approach any other car, stop to converse with anyone in any car, or walk around any car from the passenger side to the driver's side. Defendant does not appear to be carrying a bag of any kind, and does not at any point stop to attempt to withdraw "weed" from a bag or from anywhere else. In short, the assertions made by Rickman and defendant in their affidavits are fanciful factual allegations, because they are inconsistent with the reality depicted by the video evidence. Accordingly, the circuit court did not err in dismissing the petition on the basis that it was frivolous and patently without merit.

¶ 19                    III. CONCLUSION

¶ 20    This court's examination of the entire record establishes that this appeal does not present any issues of arguable merit. Therefore, the motion of appointed counsel to withdraw is granted, and the judgment of the circuit court of Madison County is affirmed.

¶ 21    Motion granted; judgment affirmed.